**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

VICTORIA RUMLER,

            Plaintiff,

vs.                                              Case No. 2:06-cv-522-FtM-34SPC

DEPARTMENT OF CORRECTIONS,
STATE OF FLORIDA,

            Defendant.
_____

## **ORDER**

This case is before the Court on Defendants' [sic], Florida Department of Corrections, Motion to Dismiss Amended Complaint (Doc. No. 18; Motion to Dismiss) filed on December 27, 2006. Defendant moves pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), to dismiss Count I, in part, of the Plaintiff's Amended Complaint (Doc. No. 19; Amended Complaint), as well as Count III in its entirety on the grounds that Plaintiff has failed to state a claim upon which relief may be granted. See Motion at 1. On January 16, 2007, Plaintiff filed Plaintiff Victoria Rumler's Response to Defendant'sMotion [sic] to Dismiss Amended Complaint (with Memorandum) (Doc. No. 27; Response). The parties have submitted briefs regarding their respective positions, and the matter is ripe for disposition.

### **I. Background Facts**[1]

Plaintiff Victoria Rumler alleges that in 2001, while employed as a Corrections Officer with the Florida Department of Corrections (Florida DOC), she "was the victim of an inmate

---

[1] The facts summarized are drawn from the allegations contained in Plaintiff's Amended Complaint.

attack which left her with physical as well as psychological injuries." Amended Complaint at ¶12.  At the time, Plaintiff "was an outstanding employee with consistently very good performance evaluations and who qualified for performance bonuses."  Id. at ¶11.  As a result of the injuries she sustained in the attack, Plaintiff was "medically precluded from returning to work as a Corrections Officer or from having direct inmate contact." Id. at ¶12. Accordingly, Plaintiff filed for and received workers' compensation benefits, and later obtained new employment with the Florida DOC as a "stores consultant," which entailed a transfer to Hendry Correctional Institution (Hendry C.I.) in Hendry County, Florida.  Id. at ¶13.  The "stores consultant" position "involves work outside the prison compound itself and does not require entry into the prison or contact with inmates in their cells."  Id. at ¶14. Nonetheless, Plaintiff contends that, in an effort to force her to resign, the Florida DOC demanded that, "in addition to her duties as [s]tores [c]onsultant, [she] assume the duty of mail carrier, responsible for the hand delivery of legal mail to inmates, in the prison, in their cells."  Id. at ¶15.  Plaintiff asserts that the decision to require her to become a mail carrier, "against the advice of her doctor, was a deliberate and knowing attempt to punish [her] for filing for Worker's [sic] Compensation benefits."  Id. at ¶16.  She maintains that she "repeatedly asked for a return to her normal duties," and also made a request for accommodation under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §12101 et seq.  Id. at ¶17, Exhibit D.  Plaintiff claims that her demands were "ignored or rejected." Id. at ¶17.

In 2005, Plaintiff became pregnant, and experienced medical complications with the pregnancy.  Id. at ¶18.  She "requested relief from her mail-carrier duties or . . . some effort

to accommodate her due to her physical condition," but Defendant refused. Id. Accordingly, Plaintiff alleges that she filed a complaint with the Equal Employment Opportunity Commission (EEOC), which was received by the EEOC on September 12, 2005. Id. at ¶19.

On November 5, 2005, Plaintiff "applied for and received family leave under the Family Leave Act." Id. at ¶21. After the birth of her child in January 2006, Plaintiff began experiencing "serious health problems." Id. at ¶22. Thus, Plaintiff sought relief through the "Sick Leave Pool," and although she claims that Defendant "mishandled the sick leave request," Plaintiff received 600 hours of sick time donated by state workers. Id. at ¶23. During this time, she further alleges that Defendant "refused to properly credit [her] accumulated leaves, shorted [sic] her pay and caused her health insurance to lapse . . . . [and] ignored the Plaintiff's regular and required communications regarding her medical status and absenteeism." Id. at ¶24. Plaintiff also alleges that the new warden was absent or unavailable at the time of these events. Id. at ¶25.

The EEOC notified Defendant of Plaintiff's claims, and Defendant responded to the charge on January 11, 2006. Id. at ¶26. Thereafter, on May 31, 2006, Jim Tridico, the acting Warden of Hendry C.I., sent Plaintiff a letter, advising her that disciplinary charges were being brought against her for "conduct inconsistent with the maintenance of proper security and welfare of the institution; excessive absenteeism; absence without authorized leave; negligence; conduct unbecoming a public employee and failure to follow oral or written instructions." Id. Exhibit G at 1. Subsequently, on June 8, 2006, Plaintiff submitted written notice to Defendant of her intent to file additional charges with the EEOC for retaliation if Defendant continued to "force [her] to deliver the legal mail and go on the

Compound and/or Confinement . . . ." Id. Exhibit F. A "predetermination conference" was held in the Warden's office at Hendry C.I., in which "the Warden reviewed and adjudicated the charges against [Plaintiff]."[2] Id. at ¶30. On July 14, 2006, Warden Tridico sent Plaintiff a letter notifying her that her employment had been terminated, effective at the close of business on the same day. Id. Exhibit H at 1.

At the time of Plaintiff's predetermination hearing, her ADA complaint was still pending before the EEOC. Id. at ¶31. After an investigation, the EEOC determined that pregnancy, the specific disability claimed by Plaintiff, did not fall within the Act, and therefore denied relief. See id. at ¶32. Plaintiff was provided with a Notice of Right to Sue by the EEOC on June 29, 2006. See id. at ¶5, Exhibit A. In addition, prior to the commencement of the instant action, Plaintiff alleges that she filed a timely written charge of retaliation under the ADA with the EEOC. Id. at ¶5. Further, she alleges that she submitted written notice to the Florida Department of Financial Services and the Defendant as required by Florida Statutes section 768.28(6). Id. at ¶7.

**II. Procedural History**

The Complaint in this action was originally filed in this Court on September 29, 2006, see Complaint (Doc. No. 1), and later amended after Defendant filed a motion to dismiss, see Motion to Dismiss (Doc. No. 8);[3] Amended Complaint (Doc. No. 19; Amended Complaint). In the Amended Complaint, Plaintiff alleges the following three claims against

---

[2] The Court notes that Plaintiff's ADA request for accommodation appears to be dated July 7, 2006, one week *after* Plaintiff's predetermination hearing. See Amended Complaint Exhibit D.

[3] Defendant's first Motion to Dismiss (Doc. No. 8) was denied as moot upon the filing of the Amended Complaint. See Order (Doc. No. 20).

the Florida DOC: retaliatory firing in violation of the ADA (Count I); deprivation of a property interest in employment without due process of law in violation of 42 U.S.C. §1983 (Count II);[4] and retaliation in violation of Florida's Workers' Compensation Act (Count III).[5]  See Amended Complaint at 8-9, 11-12.  On January 17, 2007, the parties submitted a Case Management Report (Doc. No. 28; Case Management Report), and on January 19, 2007, the Honorable Sheri Polster Chappell, United States Magistrate Judge, entered a Case Management and Scheduling Order (Doc. No. 29; Case Management Order) setting the deadlines for this case.  The Case Management Order initially established October 5, 2007, as the deadline for completing discovery and November 5, 2007, as the deadline for filing dispositive motions.  Case Management Order at 1.  However, the discovery deadline was initially extended to October 29, 2007, see Order (Doc. No. 48), and later to March 10, 2008, and the deadline to file dispositive motions was extended to April 11, 2008, see Order (Doc. No. 56).  On November 8, 2007, Magistrate Judge Chappell entered an order resetting this case for the August 2008 trial term.  See id.  As noted above, on December 27, 2006, Defendant filed the instant Motion seeking dismissal of Count I, in part, and Count III of Plaintiff's Amended Complaint.

---

[4]  Although Plaintiff does not cite a specific statutory basis for her claim of "Violation of Civil Rights," Plaintiff alleges that "[a]s a direct and proximate result of the Defendant's denial of due process, the Plaintiff has been deprived of a Career Service Job, in which she had a property interest . . . ." Amended Complaint at ¶54. The Court construes Count II as plead pursuant to 42 U.S.C. §1983.

[5]  In Count III, captioned "Retaliation," Plaintiff contends that the Defendant retaliated against her "[i]n direct violation of Florida law," Amended Complaint at ¶62, and asserts generally that "[t]he Florida Workers [sic] Compensation Act forbids employers from retaliating against workers who apply for or receive workers [sic] compensation benefits," id. at ¶61. In light of these allegations, the Court construes Count III as alleging a violation of the Florida Workers' Compensation Act, Florida Statutes section 440.205, which provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."

### III. Standard of Review

In ruling on a motion to dismiss, the Court "must accept the allegations set forth in the complaint as true." Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erikson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face," Bell Atlantic, 127 S.Ct. at 1974. The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).

### IV. Discussion

In the Motion, Defendant argues that dismissal of Count I, in part, as well as Count III of the instant action is appropriate because Plaintiff has failed to state a claim upon which relief can be granted. As to Count I, Defendant argues that Title V of the ADA does not

authorize compensatory or punitive damages. As Plaintiff may seek only equitable remedies, Defendant argues that she thus is not entitled to a trial by jury on her ADA retaliation claim. As to Count III, Defendant argues that Plaintiff failed to comply with the statutory notice requirements of Florida Statutes section 768.28(6).

### A. Count I: Retaliation in Violation of the ADA.

In the Motion, Defendant asserts that dismissal of Plaintiff's ADA retaliation claim is appropriate insofar as she seeks compensatory and punitive damages as well as a jury trial, because the ADA authorizes only equitable relief for retaliation claims.[6] Motion at 2-3. In support of its contention that Plaintiff is limited to equitable relief, Defendant cites the plain language of the ADA and the opinion of the Seventh Circuit Court of Appeals in Kramer v. Banc of America Securities, LLC, 355 F.3d 961, 965 (7th Cir. 2004), cert. denied, 542 U.S. 932 (2004).[7] See Motion at 3. Defendant continues, explaining that if equitable relief is the only available remedy, Plaintiff does not have a right to a jury trial on her ADA retaliation

---

[6] In the Response, Plaintiff contends that she "does not demand either 'compensatory' or 'punitive' damages" under Count I of the Amended Complaint. See Response at 4. Indeed, in the Amended Complaint, Plaintiff requests "damages as specifically allowed by Title V of the [ADA], 42 U.S.C. §12203, with damages specifically provided for in the form of 'remedies and procedures available under sections 12117, 12133 and 12188 of the Act.'" See Amended Complaint at ¶38. As discussed infra, by referencing the remedies available pursuant to 42 U.S.C. §12117, Plaintiff's Amended Complaint would appear to seek an award of compensatory and punitive damages. See infra pp. 9-11; 42 U.S.C. §12117; 42 U.S.C. §2000e-5. Moreover, Plaintiff's Amended Complaint also states that this prayer for relief "includ[es] compensatory and [sic] damages." Id. at ¶39. Additionally, in Plaintiff's Response, Plaintiff continues to request a jury trial on Count I and does not make any attempt to limit her claims to injunctive relief. See id. at 9. Therefore, for purposes of this Motion, the Court assumes that Plaintiff seeks compensatory and punitive damages as well as a jury trial in the Amended Complaint.

[7] Defendant also cites Bearelly v. Fla. Dept. of Corrections, 2002 WL 400779, at *5 (M.D. Fla. Jan. 14, 2002) for the same holding as Kramer, that "Plaintiff is not entitled to trial by jury on claims seeking equitable relief." See Motion at 3. However, in Bearelly, the court dismissed the plaintiff's claims for money damages under the anti-retaliation provision of the ADA, but did so on sovereign immunity grounds. See Bearelly, 2002 WL 400779, at *5. The court determined that the Florida Department of Corrections, as an arm of the State, was immune from suits for money damages. See id.

claim. Id. Plaintiff, on the other hand, asserts that there is a split of authority concerning this issue, and urges the Court to follow the reasoning of Edwards v. Brookhaven Science Associates, LLC, 390 F. Supp.2d 225, 233-36 (E.D. N.Y. 2005), where the court, rejecting Kramer, concluded that the plaintiff was entitled to a jury trial, and entitled to seek compensatory and punitive damages as part of an ADA retaliation claim. Response at 5-6. Thus, the Court must determine whether a plaintiff alleging retaliation under the ADA, arising from the plaintiff's employment, has the right to seek compensatory and punitive damages, and to request a trial by jury as to these issues.

The Court acknowledges that circuit and district courts are split on this issue. On one hand, the Seventh Circuit held, in a case of first impression among the federal appellate courts, that the ADA authorizes only equitable relief for retaliation claims. See Kramer, 355 F.3d at 965. Thereafter, the Fourth Circuit, citing Kramer, held in two unpublished per curiam opinions that compensatory and punitive damages were unavailable to ADA retaliation claimants. Bowles v. Carolina Cargo, Inc., 100 Fed. Appx. 889, 889 (4th Cir. 2004) (per curiam); Rhoads v. FDIC,[8] 94 Fed. Appx. 187, 188 (4th Cir. 2004) (per curiam). On the other hand, the Second, Eighth and Tenth Circuits have affirmed awards of compensatory damages in ADA retaliation cases, although none independently examined whether such damages are available under the act. See Muller v. Costello, 187 F.3d 298, 314 (2d Cir. 1999); Foster v. Time Warner Entertainment Co., 250 F.3d 1189, 1196-98 (8th

---

[8] In the Response, Plaintiff cites the trial court opinion in Rhoads v. FDIC, 286 F. Supp.2d 532 (D. Md. 2003) for the proposition that "the right to trial by jury and to damages in ADA retaliation cases is well established [sic]." Response at 6. However, Plaintiff failed to direct the Court to subsequent appellate review of the lower court decision, in which the Fourth Circuit held that compensatory and punitive damages were unavailable for ADA retaliation claims. Rhoads v. FDIC, 94 Fed. Appx. 187, 187 (4th Cir. 2004).

Cir. 2001); Slitros v. Chrysler Corp., 306 F.3d 562, 570 (8th Cir. 2002); EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1244-43 (10th Cir. 1999).  As the Eleventh Circuit has not addressed the question of whether compensatory and punitive damages are available under the ADA's anti-retaliation provision,[9] the Court's decision is informed by persuasive authority from the circuit and district courts that have considered the issue, as well as the Court's analysis of the applicable statutes.

"The starting point of any analysis of statutory interpretation is the language of the statute." U.S. v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999) (citing Watt v. Alaska, 451 U.S. 259, 265 (1981)).  In construing the scope of the statute, the Court looks not only to the language of the relevant provisions, but also to "the design of the statute as a whole and to its object and policy." Anderson v. Singletary, 111 F.3d 801, 803 (11th Cir. 1997) (quoting Crandon v. U.S., 494 U.S. 152, 158 (1990)).  Moreover, the Court employs a canon of statutory construction that does not "look at one word or term in isolation," but instead to the "statutory scheme for clarification and contextual reference."  U.S. v. McLemore, 28 F.3d 1160, 1162 (11th Cir. 1994) (citing Smith v. U.S., 508 U.S. 223, 233-34 (1993)); see also Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 558 (2005) (explaining that ordinary principles of statutory construction require courts to examine the language of the statute "in light of the context, structure, and related statutory provisions").

Applying these principles of statutory construction, the Court looks first to the relevant

---

[9] The Eleventh Circuit has considered whether the ADA's anti-retaliation provision confers individual liability when the practice opposed is made unlawful by Title I, Albra v. Advan, Inc., 490 F.3d 826 (11th Cir. 2007), and Title II, Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  However, in both cases, the court decided only the scope of the right involved, and declined to address the nature of the relief available.  See Shotz, 344 F.3d. at 1166 n.6; see generally Albra, 490 F.3d 826.

provisions of the ADA. The ADA is a comprehensive statute enacted in order to assist in remedying discrimination against persons with disabilities in three areas: employment, public services, and public accommodations. 42 U.S.C. §§12101-12213; Shotz, 344 F.3d at 1166 n.5. The statute is divided into subchapters known as "Titles": Title I prohibits discrimination against the disabled with regard to the terms and conditions of employment, §§12111-12117; Title II proscribes discrimination against the disabled regarding access to public services, §§12131-12165; Title III prohibits discrimination against the disabled in public accommodations, §§12181-12189; and Title V contains an "anti-retaliation" provision, §12203. Albra, 490 F.3d at 829.

The anti-retaliation provision of the ADA prohibits discrimination against an individual who has "opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. §12203(a). Unlike Titles I, II, and III of the ADA, the prohibition against retaliation is not accompanied by a specific delineation of available remedies. Instead, §12203(c) provides that: "[t]he remedies and procedures available under sections [12117], [12133], and [12188] of this Act shall be available to aggrieved persons for violations of [§12203(a)] . . . with respect to [T]itle I, [T]itle II and [T]itle III, respectively." §12203(c). Sections 12117, 12133, and 12188 are the enforcement provisions for Titles I, II, and III of the ADA, respectively. See id. Thus, the remedies available to a claimant for ADA retaliation depend on the context in which the alleged retaliation arose and the nature of the "act or practice" opposed. In Count I of the Amended Complaint, Plaintiff alleges that Defendant retaliated against her for filing a charge with the

EEOC alleging employment discrimination in violation of the ADA. See Amended Complaint at ¶40. Therefore, the anti-retaliation provision incorporates the remedies set forth in §12117, the "enforcement" provision of Title I of the ADA. See Albra, 490 F.3d at 832. Section 12117 in turn adopts the "powers, remedies, and procedures" set forth in Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. §2000e-5. See id. Thus, the Court must look to the remedies available under Title VII in determining what remedies are available to a plaintiff alleging retaliation under the ADA arising in the employment context.

At the time Congress enacted the ADA in 1990, 42 U.S.C. §2000e-5 permitted a court to award certain monetary relief including back pay, but did not provide for compensatory or punitive damages or for the right to trial by jury. See 42 U.S.C. §2000e-5(g)(1) (listing available remedies for intentional employment discrimination as follows: "Injunctions; affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders."). The 1991 amendments to the Civil Rights Act expanded the scope of remedies set forth in §2000e-5(g), permitting plaintiffs to recover compensatory and punitive damages, see 42 U.S.C. §1981a(a)(2), and to demand a jury trial on such claims, see 42 U.S.C. §1981a(a)(1).

As claims of retaliation under the ADA are not specifically mentioned in §1981a, courts have disagreed on whether compensatory and punitive damages are available for such claims. In Kramer, the court examined the statutory framework of the ADA retaliation provision and found that because ADA retaliation claims are not mentioned in §1981a(a)(2), the Civil Rights Act of 1991 did not "expand the remedies available to a party bringing an ADA retaliation claim against an employer and therefore compensatory and punitive

damages are not available." Kramer, 355 F.3d at 965.  The court observed, "[b]ecause the plain language of §1981a(a)(2) limits its application to specific claims, it is inappropriate to expand the scope of the statute . . . to include claims for retaliation by an employer under the ADA." Id. at 966.  Accordingly, the court reasoned that as "claims of retaliation under the ADA (§12203) are not listed [in §1981a(a)(2)]," the remedies available for such claims are "limited to the remedies set forth in §2000e-5(g)(1)." Id. at 965.  Thus, the court concluded that the retaliation provision authorizes equitable relief only and, as a result, the plaintiff had no statutory or constitutional right to a trial by jury on her retaliation claim. Id. at 966.

Plaintiff, on the other hand, asserts that the Court should adopt the reasoning of the Eastern District of New York in Edwards, 390 F. Supp.2d at 235.  In Edwards, the court rejected the analysis of the Kramer court and its reliance on the omission of a specific reference to §12203. Id.

> '[N]o sound cannon of interpretation requires Congress to speak with extraordinary clarity . . . .' [Exxon Mobil Corp., 545 U.S. at 558]. The statute must be read in conjunction with and 'in light of [the] context, structure, and related statutory provisions.' [Id.]  In the Court's view, the omission of §12203 in §1981 is of no consequence when §1981 is read in conjunction with the relevant provisions of the ADA.  As stated above, the retaliation provision of the ADA contains no remedy of its own.  Rather, it is clear that the 'remedies and procedures . . . available to aggrieved persons' for violations of §12203 are the *same* as the 'remedies and procedures available under' Title I of the ADA. Id.  Considering that the remedies available for retaliation under the ADA are commensurate with those available under Title I, it was unnecessary for Congress to separately mention retaliation in §1981.  Thus, it is fair to assume that the expansive effect of §1981(a) applies equally to claims under Title I as it does to retaliation claims by virtue of the fact that the remedies available for retaliation claims incorporate, and are coextensive with, the remedies available under Title I.

Edwards, 390 F. Supp.2d at 236 (emphasis original).

Upon review of the relevant provisions of the ADA, the Civil Rights Act of 1964, and the 1991 amendments, as well as the persuasive analysis of other courts, this Court finds that the remedies for employment retaliation under Title V of the ADA are coextensive with the remedies for employment discrimination under Title I.  As § 12203 adopts the remedies of §12117, a plaintiff claiming retaliation under the ADA in the employment context has the right to the same remedies and procedures available to a plaintiff alleging intentional employment discrimination.  Those remedies are set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5, as amended.  It is not significant that Congress did not reiterate this link in the 1991 amendments.  To do so would have been redundant as §12203 already provided that plaintiffs claiming retaliation in the employment context could avail themselves of the same remedies as plaintiffs claiming discrimination under Title I. Indeed, courts "must presume that Congress said what it meant and meant what it said." Shotz, 344 F.3d at 1166 n.5 (quoting U.S. v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998)).  When Congress expanded the relief available under §12117 to include legal damages, it also expanded the relief available under §12203 by reference.  Accordingly, the Court finds that Plaintiff is entitled to seek compensatory and punitive damages, and entitled to demand a trial by jury on her ADA retaliation claim.

**B. Count III: Retaliation in Violation of the Florida Workers' Compensation Act**

Turning to the remaining issue raised in the Motion, Defendant asserts that the Court should dismiss Count III of the Amended Complaint because Plaintiff failed to comply with the Florida notice of claim provisions set forth in Florida Statutes section 768.28(6).  See

Motion at 4. Specifically, Defendant asserts that Plaintiff "has not presented the claim in writing to the appropriate agency, and also, to the Department of Financial Services," and that "the Amended Complaint fails to allege, or otherwise establish, that the Department of Financial Services or the appropriate agency denied the claim in writing." Id. at 5. However, Plaintiff asserts in the Amended Complaint that she "submitted written notice to the State of Florida and the Defendant as mandated by state statute." Amended Complaint at ¶7. Moreover, Plaintiff asserts that she "has previously given notice of her complaints to the EEOC and the Public Employees Relations Commission," id. at ¶8, and that "the six month notice period would, if strictly applied, cause the Plaintiff to violate the 90 day [sic] filing period [set forth in the EEOC Notice of Right to Sue]," id. at ¶6.

The Florida legislature has waived the sovereign immunity of the State of Florida and its subdivisions from tort actions, including those filed pursuant to Florida Statutes section 440.205. Osten v. City of Homestead, 757 So.2d 1243, 1244 (Fla. 3d DCA 2000). In order to benefit from the State's waiver of sovereign immunity, a plaintiff must comply with the statutory notice procedure of Florida Statutes section 768.28(6),[10] which requires, in pertinent part:

> (6)(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and

---

[10] "When determining whether there has been a waiver of sovereign immunity, the courts should look at the immunity provisions in effect at the time the cause of action accrued." Hattaway v. McMillian, 903 F.2d 1440, 1444 n.3 (11th Cir. 1990) (citing Kaisner v. Kolb, 543 So.2d 732, 738 (Fla. 1989)). The Court notes that section 768.28 was amended in 2006, and determines that the changes have no effect on the Court's analysis of the pleadings before the Court in this Order. See Fla. Stat. §768.28(6), amended, 2006 Fla. Laws Ch. 2006-234, §1 (effective June 20, 2006).

>> the Department of Financial Services or the appropriate agency denies the claim in writing . . . .
>> . . .
>> (b)  For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues.

Fla. Stat. §768.28(6)(a)-(b).  This statute requires a prospective plaintiff to file a written claim for damages with the appropriate agency or subdivision within three years after a claim accrues. Fla. Stat. §768.28(6)(a).  All claims, with limited exceptions inapposite to this case, must also be presented to the Florida Department of Financial Services. See id.  After such written notice, the Department of Financial Services or the appropriate agency will be given the opportunity to investigate the claim and either provide or deny a remedy, and the requirements of notice and denial of the claim are conditions precedent for maintaining a tort action against a Florida state entity.  See Fla. Stat. §768.28(6)(a)-(b).  Nevertheless, pursuant to the statute, the failure of the Department of Financial Services or the appropriate agency to make a final disposition of the claim in writing within six months of its filing is deemed a final denial of the claim. See Fla. Stat. §768.28(6)(d).  Thus, absent receipt of a denial in writing, section 768.28(6)(d) essentially requires a claimant to wait six months from the date of notice prior to commencing a tort action against a Florida state entity. See id.

Florida law requires strict compliance with the notice requirement of section 768.28(6) in order to maintain an action against the State, its agencies or subdivisions, "and a suit may be dismissed for lack of notice." Osten, 757 So.2d at 1244.  Indeed, "[t]he purpose of the notice requirement in statutory subsection 6(a) is to give the appropriate public bodies an opportunity to investigate all claims." Medberry v. McCallister, 937 So.2d 808, 813 (Fla. 1st

15

DCA 2006) (quotation marks omitted) (quoting Metro. Dade County v. Reyes, 688 So.2d 311, 313 (Fla. 1996); Maynard v. State Dept. of Corrections, 864 So.2d 1232, 1233-34 (Fla. 1st DCA 2004)). Accordingly, under Florida law, "a complaint brought without first providing statutory notice must be dismissed without prejudice in order to allow the plaintiff to comply with the notice requirement, if the time has not expired to provide notice." Medberry, 937 So.2d at 813 (citing Wemett v. Duval County, 485 So.2d 892 (Fla. 1st DCA 1986); Thingpin v. Sun Bank of Ocala, 458 So.2d 315 (Fla. 5th DCA 1984); Burkett v. Calhoun County, 441 So.2d 1108 (Fla. 1st DCA 1983)).

As Count III is solely a claim under Florida Law, Plaintiff must comply with the notice requirements of section 768.28(6) as a condition precedent to maintaining an action against the Florida DOC. In the Motion, Defendant argues that "Plaintiff has not presented the claim in writing to the appropriate agency, and also, to the Department of Financial Services… [but] purports only to have presented the claim to the Department of Financial Services." Motion at 5. However, Plaintiff alleges that she complied with the notification requirements, and further represents that "[c]opies of the statutory §768.28(6) Notices are attached hereto as composite (Exhibit B)."[11] Amended Complaint at ¶7. Indeed, Exhibit B to the Amended Complaint is a copy of a letter prepared and purportedly sent by Plaintiff's counsel via certified mail on December 11, 2006. See id. Exhibit B at 1. The address on the letter

---

[11] In ruling on the Motion, the Court considers the facts and allegations set forth in Exhibit B as well as the Amended Complaint. See Rule 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss for failure to state a claim, all facts set forth in the plaintiff's complaint are to be accepted as true, and the court limits its consideration to the pleadings and attachments thereto."); Taylor v. Appleton, 30 F.3d 1365, 1368 (11th Cir. 1994) (finding that an exhibit to the complaint was part of the pleadings, and thus, the Rule 12(b)(6) motion was not converted into a motion for summary judgment).

indicates that the letter was sent to the Florida Department of Financial Services, and a notation on the second page shows that a copy of the letter was sent by certified mail to "Hendry Correctional Institute, Florida Department of Corrections." See id. at 1-2. Accepting Plaintiff's allegations as true, the Court determines, for purposes of ruling on Defendant's Motion to Dismiss, that Plaintiff submitted the letter to the Department of Financial Services and the Florida DOC.

The Court turns next to the question of whether Plaintiff's December 11, 2006 letter satisfies the requirements of Florida law to accomplish a waiver of sovereign immunity. Although Plaintiff directs the Court to Exhibit B of the Amended Complaint as evidence of her compliance with Florida Statutes section 768.28(6), the Court finds that the letter contained in Exhibit B directly contradicts her allegation of compliance. The "notification letter" purports to have been mailed on December 11, 2006, two months after Plaintiff filed the Complaint in this action on September 29, 2006, and only eight days before she filed the Amended Complaint alleging compliance on December 19, 2006. See Amended Complaint Exhibit B. Moreover, the Court rejects Plaintiff's argument that she complied with the notice requirement by virtue of her complaints to the EEOC, termination hearing at Hendry C.I., Florida PERC appeal, and by claiming workers' compensation, Amended Complaint at ¶8, as none of these served as written notification to the Florida Department of Financial Services or the Florida DOC of the present claim seeking damages and a jury trial under Florida law. See Smart v. Monge, 667 So.2d 957, 959 (Fla. 2d DCA 1996) ("Although the statute lacks specificity as to what is required to present a notice of claim, we conclude, at a minimum, the written notification must contain language notifying the agency of a claim;

that is, a demand for compensation for an injury.") (citing Mrowczynski v. Vizenthal, 445 So.2d 1099 (Fla. 4th DCA 1984)). Even viewing Plaintiff's allegations in the most liberal manner, the only reasonable inference to be drawn is that Plaintiff did not strictly comply with the requirements of section 768.28(6)(d) prior to filing suit.[12] Nevertheless, the Court declines to dismiss Count III of Plaintiff's Amended Complaint.

In limited circumstances, the Eleventh Circuit has held that Florida law allows a plaintiff to meet her burden under section 768.28(6) "if the initial non-compliance with the section is cured before trial." Hattaway v. McMillan, 903 F.2d 1440 at 1449 n.12 (1990) (applying Florida law). Notably, in Hattaway, the court emphasized that the defendant had not claimed that he did not receive notice, and the record reflected that notice was given one day prior to the filing of the lawsuit. Id. at 1445. Accordingly, the court determined that the passage of six months essentially "cured" the plaintiff's failure to wait the required six months before bringing the suit. Id. (emphasis omitted). Likewise, in Fitzgerald v. McDaniel, 833 F.2d 1516, 1519-20 (11th Cir. 1987) (applying Florida law), the Eleventh Circuit determined that a plaintiff's failure to comply with section 768.28(6) was moot after six months passed from the date the required notice was actually given. The court affirmed the district court's decision not to dismiss the case, in which the district court reasoned:

> [I]t would serve no useful purpose to dismiss the complaint, for such a dismissal clearly must be without prejudice and with leave to amend. Since there would be no need to amend in light of the fact that all conditions

---

[12] The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). However, the Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

> precedent to instituting an action have now been met, the plaintiff would only need to refile his original complaint. I note that if the defendants were able to articulate some actual prejudice that resulted from the plaintiff's failure to wait six months before filing suit, I would be more inclined to dismiss the case and require the plaintiff to comply strictly with the language of Section 768.28(6).

Id. at 1520 n.2 (citing district court order) (internal footnote omitted).

In the instant action, as in Fitzgerald, more than six months have passed since Plaintiff gave notice on December 11, 2006. The undersigned finds that it would serve no useful purpose to dismiss Count III of Plaintiff's Amended Complaint, based upon her initial failure to strictly comply with the statutory requirements. As the Court has determined for purposes of this Order that Rumler notified the appropriate entities and the requisite six-month period has elapsed, such a dismissal would be futile, as it clearly must be without prejudice and with leave to amend. See Williams v. Henderson, 687 So.2d 838, 839-40 (Fla. 2d DCA 1996) (finding that the plaintiff's failure to wait six months to file suit after giving notice did not mandate dismissal). Accordingly, Defendant's Motion to Dismiss the Amended Complaint is due to be denied.

### V. Conclusion

Accordingly, it is hereby **ORDERED**:

1. Defendants' [sic], Florida Department of Corrections, Motion to Dismiss Amended Complaint (Doc. No. 18) is **DENIED**.

2.      Defendant shall serve and file an Answer to the Amended Complaint on or before **February 6, 2008**.

**DONE AND ORDERED** at Fort Myers, Florida this  24th  day of January, 2008.

MARCIA MORALES HOWARD
United States District Judge

lc5
Copies to:
Counsel of Record